WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

David Mori,

        Plaintiff,

v.

Acting Commissioner of Social Security,

        Defendant.

No. CV-16-1743-PHX-ESW

**ORDER**

        Pending before the Court is David Mori's ("Plaintiff") appeal of the Social Security Administration's ("Social Security") denial of his claims for disability insurance benefits and supplemental security income. The Court has jurisdiction to decide Plaintiff's appeal pursuant to 42 U.S.C. § 405(g), 1383(c). Under 42 U.S.C. § 405(g), the Court has the power to enter, based upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing. Both parties have consented to the exercise of U.S. Magistrate Judge jurisdiction. (Doc. 13).

        After reviewing the Administrative Record ("A.R.") and the parties' briefing (Docs. 17, 23, 24), the Court finds that the Administrative Law Judge's ("ALJ") decision is supported by substantial evidence and is free of harmful legal error. The decision is therefore affirmed.

# I. LEGAL STANDARDS

## A. Disability Analysis: Five-Step Evaluation

The Social Security Act (the "Act") provides for disability insurance benefits to those who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act also provides for Supplemental Security Income to certain individuals who are aged 65 or older, blind, or disabled and have limited income. 42 U.S.C. § 1382. To be eligible for benefits based on an alleged disability, the claimant must show that he or she suffers from a medically determinable physical or mental impairment that prohibits him or her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(A)(3)(A). The claimant must also show that the impairment is expected to cause death or last for a continuous period of at least 12 months. *Id.*

To decide if a claimant is entitled to Social Security benefits, an ALJ conducts an analysis consisting of five questions, which are considered in sequential steps. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant has the burden of proof regarding the first four steps:[1]

> **Step One**: Is the claimant engaged in "substantial gainful activity"? If so, the analysis ends and disability benefits are denied. Otherwise, the ALJ proceeds to step two.
>
> **Step Two:** Does the claimant have a medically severe impairment or combination of impairments? A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied at this step. Otherwise, the ALJ proceeds to step three.
>
> **Step Three:** Is the impairment equivalent to one of a number of listed impairments that the Commissioner acknowledges

---

[1] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

are so severe as to preclude substantial gainful activity? 20 C.F.R. §§ 404.1520(d), 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step of the analysis.

**Step Four:** Does the impairment prevent the claimant from performing work which the claimant performed in the past? If not, the claimant is "not disabled" and disability benefits are denied without continuing the analysis. 20 C.F.R. §§ 404.1520(f), 416.920(f). Otherwise, the ALJ proceeds to the last step.

If the analysis proceeds to the final question, the burden of proof shifts to the Commissioner:[2]

**Step Five:** Can the claimant perform other work in the national economy in light of his or her age, education, and work experience? The claimant is entitled to disability benefits only if he or she is unable to perform other work. 20 C.F.R. §§ 404.1520(g), 416.920(g). Social Security is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's residual functional capacity, age, education, and work experience. *Id.*

### B. Standard of Review Applicable to ALJ's Determination

The Court must affirm an ALJ's decision if it is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Although "substantial evidence" is less than a preponderance, it is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

---

[2] *Parra*, 481 F.3d at 746.

In determining whether substantial evidence supports the ALJ's decision, the Court considers the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusions. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). This is because the ALJ, not the Court, is responsible for resolving conflicts, ambiguity, and determining credibility. *Magallanes*, 881 F.2d at 750; *see also Andrews*, 53 F.3d at 1039.

The Court must also consider the harmless error doctrine when reviewing an ALJ's decision. This doctrine provides that an ALJ's decision need not be remanded or reversed if it is clear from the record that the error is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008) (citations omitted); *Molina*, 674 F.3d at 1115 (an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion") (citations omitted).

## II. Plaintiff's Appeal

### A. Procedural Background

Plaintiff, who was born in 1961, has worked as an auto mechanic. (A.R. 31, 47, 54). In August 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income. (A.R. 160-70). Plaintiff's applications alleged that on June 10, 2013, Plaintiff became unable to work due to renal cancer and "bad legs/feet." (A.R. 54, 62). Social Security denied the applications on December 5, 2013. (A.R. 96-104). In May 2014, upon Plaintiff's request for reconsideration, Social Security affirmed the denial of benefits. (A.R. 126-29). Plaintiff sought further review by an ALJ, who conducted a hearing in November 2014. (A.R. 24-51).

In her December 3, 2014 decision, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act. (A.R. 10-19). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Social Security Commissioner. (A.R. 1-3, 5-6). On June 2, 2016, Plaintiff filed a Complaint (Doc. 1) requesting judicial review and reversal of the ALJ's decision.

### B. The ALJ's Application of the Five-Step Disability Analysis

The ALJ completed all five steps of the disability analysis before finding that Plaintiff is not disabled and entitled to disability benefits.

#### 1. Step One: Engagement in "Substantial Gainful Activity"

The ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 10, 2013. (A.R. 12). Neither party disputes this determination.

#### 2. Step Two: Presence of Medically Severe Impairment/Combination of Impairments

The ALJ found that Plaintiff has the following three impairments: (i) renal cell carcinoma status post resection; (ii) hypertension; and (iii) obesity. (A.R. 12). Plaintiff argues that the ALJ erred by not including Plaintiff's alleged "urinary problems" in the list of severe impairments. (Doc. 17 at 11).

#### 3. Step Three: Presence of Listed Impairment(s)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security regulations. (A.R. 13). This finding is undisputed.

#### 4. Step Four: Capacity to Perform Past Relevant Work

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that
> [Plaintiff] can only occasionally stoop and climb ramps or stairs but never ladders, ropes, or scaffolds. The claimant is unable to kneel or crawl but can frequently crouch. In

> addition, the claimant must avoid working around unprotected heights but he can frequently work around extreme temperatures.

(A.R. 13).

Based on the RFC, the ALJ determined that Plaintiff is unable to perform his past relevant work as an auto mechanic. (A.R. 17). While Plaintiff does not dispute the ALJ's determination that he is unable to perform his past relevant work, Plaintiff argues that the ALJ improperly rejected Plaintiff's testimony regarding his symptoms and limitations in assessing Plaintiff's RFC. (Doc. 17 at 11-15).

### 5. Step Five: Capacity to Perform Other Work

At the administrative hearing, a vocational expert ("VE") testified that based on Plaintiff's RFC, Plaintiff would be able to perform the requirements of representative occupations such as assembler, packager, and shirt folding machine operator. (A.R. 47-48). The ALJ found that the VE's testimony was consistent with the information in the Dictionary of Occupational Titles and that the jobs identified by the VE existed in significant numbers in the national economy. (A.R. 18). After considering the VE's testimony, Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff can make a successful adjustment to other work and is therefore not disabled. (*Id.*). Plaintiff argues that because he is now age 55, he should be found disabled under the Medical-Vocational Guidelines (the "Grids"). (Doc. 17 at 9-11).

### C. Plaintiff's Argument that he is Entitled to Benefits Under the Grids as he Turned 55 After the ALJ's Decision

At the fifth step of the disability analysis, the burden rests on the Commissioner to show that the claimant can engage in work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). In determining whether the claimant retains the ability to perform other work, an ALJ may refer to the Grids in certain cases. 20 C.F.R. Part 404, Subpart P, Appendix 2; *Desrosiers v. Sec. of Health and Human Services*, 846 F.2d 573, 576-77 (9th Cir. 1988). The Grids are divided into three job

categories: (i) sedentary work, (ii) light work, and (iii) medium work. 20 C.F.R. Part 404, Subpart P, Appendix 2. The Grids calculate whether or not the claimant is disabled based on the claimant's exertional physical ability, age, education, and work experience. As such, the Grids are intended to streamline the administrative process and encourage uniform treatment of claims. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Grids).

> Grid Rule 202.00(c) provides that:
> [F]or individuals of advanced age [i.e. age 55 or older] who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(c). Because Plaintiff is (i) now 55 years old; (ii) has been restricted to light work; and (iii) does not have transferrable skills, Plaintiff argues that he should be found disabled under Grid Rule 202.02.[3] (Doc. 17 at 10-11). A claimant's age, however, "is to be determined at the time of the Secretary's final decision." *Madrigal v. Sullivan*, 777 F.Supp. 1503, 1506 (N.D. Cal. 1991) (citing *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir. 1988) (considering the age of claimant at the date of the ALJ's decision)).

In accordance with Social Security regulations, the Ninth Circuit has instructed that the Grids' age categories are not to be applied "mechanically in a borderline [age] situation." *Calvin v. Heckler*, 782 F.2d 802, 805 (9th Cir. 1986) (quoting 20 C.F.R. § 404.1563(a) (1985)). In *Russell v. Bowen*, 856 F.2d 81 (9th Cir. 1988), the Ninth Circuit

---

[3] Grid Rule 202.02 directs a finding that a claimant is disabled where the claimant (i) has a maximum sustained work capability of light work as a result of severe medically determinable impairments; (ii) is of "advanced age" (i.e. 55 or older); (iii) has "limited or less" education; and (iv) has previous work experience that is "skilled or semi-skilled" and the skills are not transferable.

- 7 -

analyzed what constitutes a "borderline" age situation. The claimant in *Russell* was 59 years and 5 months old at the time of Social Security's final decision. *Id.* at 83. The claimant would have been found disabled under the Grids if he had reached the age of 60 at the time of Social Security's final decision. *Id.* The Ninth Circuit did not find that this age presented a "borderline" situation, explaining that the claimant "was more than a few days short of the cut-off date, and was in fact closer to age 59 than to age 60." *Id.* at 84. The Court stated that "[l]ines must be drawn at some point, otherwise there would be no efficient way to utilize the Grid system." *Id.*

Social Security's final decision denying Plaintiff's applications for disability benefits is the ALJ's December 3, 2014.[4] Petitioner was 53 years old on December 3, 2014. Because Plaintiff was almost two years short of age 55 at the time of the ALJ's decision, the Court does not find that this case presents a "borderline" age situation. Accordingly, the ALJ did not err by failing to consider whether to utilize the higher age category and find Plaintiff disabled under Grid Rule 202.02.

To the extent that Plaintiff argues that his current age should constitute a changed circumstance justifying a remand, the argument is without merit. "A claimant seeking remand [based on changed circumstances] must demonstrate that there is 'new evidence which is material, and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir. 1990) (citation omitted). The new evidence must be probative of the claimant's "condition as it existed at the relevant time—at or before the disability hearing." *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987). When the evidence presented is probative of the claimant's present condition, this new evidence "would be material to a new application, but not probative of his condition at the hearing." *Id.* at 512. Plaintiff's current age is certainly material to a new disability

---

[4] The Appeals Council denied Plaintiff's request for review. (A.R. 1-4). "When the Appeals–Council denies review[,] the Secretary's final decision is the underlying decision of the ALJ." *Madrigal*, 777 F.Supp. at 1506 (citing 20 C.F.R. § 404.981).

- 8 -

benefit application, but it is not probative of his condition at the time of the ALJ's decision. *See id.* ("The new evidence indicates, at most, mental deterioration after the hearing, which would be material to a new application, but not probative of his condition at the hearing."); *Fyfe v. Finch*, 311 F.Supp. 552, 557 (W.D. Pa. 1970) ("Evidence of a disability occurring subsequent to the expiration of the plaintiff's insured status cannot have retroactive effect."). Plaintiff's change in age after the ALJ's decision does not satisfy the changed circumstances standard. To be considered at the higher age level, Plaintiff must file a new Social Security application. *See Ward v. Schwieker*, 686 F.2d 762, 765-66 (9th Cir. 1982) (explaining that new medical evidence showing a deterioration of claimant's condition after Social Security's decision terminating benefits was not material to the decision, but "could form the basis for a new claim"); *Freeman v. Shalala*, Civ. No. 94–20636 SW, 1995 WL 219187, at *2 (N.D. Cal. April 10, 1995) ("When the evidence reflects the current condition of the claimant but is not probative of the plaintiff's condition at the time of the initial determination, the correct procedure for the claimant to follow is to reapply for benefits.") (citing *Ward*, 686 F.2d at 765-66).

### D. Plaintiff's Challenge to the ALJ's Determination that Plaintiff's "Urinary Problems" are Non-Severe

At Step Two of the disability analysis, the claimant must show that his or her medically determinable impairments are severe. "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id.* (quoting Social Security Ruling ("SSR") 85–28).

In his decision, the ALJ acknowledged Plaintiff's testimony that due to Plaintiff's urinary issues, he frequently needs to use the bathroom. (A.R. 13). The ALJ found that "this is not job preclusive." (*Id.*). The ALJ also noted that tests revealed Plaintiff's urinary bladder to be normal in size. (A.R. 13, 326). The ALJ stated that "[t]here are

minimal records supporting a finding of disability and no mental health source assessed limitations due to these impairments." (A.R. 13). As such, the ALJ found that Plaintiff's urinary issues do not cause more than a minimal effect on Plaintiff's ability to perform basic work activities. (*Id.*).

Plaintiff challenges the ALJ's decision to not include the urinary problems in the list of severe impairments. Plaintiff cites his testimony at the hearing that he urinates twice an hour during the day and goes to the bathroom outside at his home because he "make[s] a mess" as he "cannot urinate correctly" in that "[i]t sprinkles left, right." (Doc. 17 at 11; A.R. 38-40). The ALJ, however, did not find Plaintiff's testimony credible.[5] It was Plaintiff's burden to produce evidence showing that the urinary issues caused more than a minimal interference in his ability to work and was expected to last for a continuous period of 12 months or longer. *See Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (claimant carries burden to present "complete and detailed objective medical reports" of his or her condition from licensed medical professionals); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (impairment must be expected to result in death or for a continuous period of not less than twelve months to establish basis for disability under Social Security Act). Plaintiff has not produced any such evidence. Substantial evidence supports the ALJ's determination that the urinary issues are non-severe.

In addition, where a disability claimant argues that an ALJ has erred, the claimant must also show that the asserted error resulted in actual harm. *See Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09

---

[5] As discussed in the following section, the ALJ did not improperly discredit Plaintiff's testimony.

- 10 -

(2009)). The Court looks at the "record as a whole to determine [if] the error alters the outcome of the case." *Molina*, 674 F.3d at 1115.

An ALJ's error at Step Two by failing to find an alleged impairment "severe" is harmless if the ALJ considered the impairment when determining the claimant's RFC in Step Four. For example, in *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007), an ALJ found at Step Two that the claimant was severely impaired "as a result of status post laminectomy and diabetes mellitus." On appeal, the claimant argued that the ALJ erred by failing to also find that the claimant's bursitis was a severe impairment. The Ninth Circuit held that the ALJ's "decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless." *Id.*

In *Burch v. Barnhart,* 400 F.3d 676, 682 (9th Cir. 2005), the claimant argued on appeal that the ALJ failed to include obesity as a severe impairment at Step Two. The Ninth Circuit found that the ALJ did not commit harmful error as the ALJ adequately considered the claimant's obesity in the RFC determination. The Court also noted that the claimant did not provide evidence of any functional limitations caused by the claimant's obesity that the ALJ failed to consider. *Id.* at 684.

Here, although the ALJ did not find Plaintiff's urinary issues severe at Step Two, the ALJ acknowledged Plaintiff's testimony regarding the issues in making the RFC assessment. (A.R. 14). The ALJ did not find Plaintiff's testimony credible. The ALJ then properly weighed the remaining evidence and determined that Plaintiff is capable of light work, subject to a number of limitations. Similar to the claimant's appeal in *Burch*, Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations caused by the urinary issues that the ALJ failed to consider. Plaintiff has thus failed to show that finding the urinary issues severe at Step Two would have any effect on the ultimate disability determination. Accordingly, even if the ALJ erred by finding the urinary issues non-severe, the error is harmless.

**E. Plaintiff's Challenge to the ALJ's Credibility Assessment of Plaintiff's Symptom Testimony**

When evaluating the credibility of a claimant's testimony regarding subjective pain or symptoms, the ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). In the first step, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms. Rather, a claimant must only show that it could have caused some degree of the symptoms. *Smolen*, 80 F.3d at 1282.

If a claimant meets the first step, and there is no evidence of malingering, the ALJ can only reject a claimant's testimony about the severity of his or her symptoms by offering specific, clear, and convincing reasons. *Lingenfelter*, 504 F.3d at 1036. The ALJ cannot rely on general findings. The ALJ must identify specifically what testimony is not credible and what evidence undermines the claimant's complaints. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010). In weighing a claimant's credibility, the ALJ can consider many factors including: a claimant's reputation for truthfulness, prior inconsistent statements concerning the symptoms, unexplained or inadequately explained failure to seek treatment, and the claimant's daily activities. *Smolen*, 80 F.3d at 1284; *see also* 20 C.F.R. § 404.1529(c)(4) (Social Security must consider whether there are conflicts between a claimant's statements and the rest of the evidence). In addition, although the lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his or her credibility analysis. *See* 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005).

In March 2016, the Social Security Administration issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new

guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"). SSR 16-3p eliminates the term "credibility" used in SSR 96-7p in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. That is, "[t]he change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Although SSR 16-3p was issued after the ALJ's December 2014 decision, it is consistent with Social Security's prior policies and with prior Ninth Circuit case law. *Compare* SSR 16-3p with SSR 96-7p (both policies set forth a two-step process to be followed in evaluating a claimant's testimony and contain the same factors to be considered in determining the intensity and persistence of a claimant's symptoms). Because 16-3p clarifies rather than changes existing law,[6] the Court will consider the ALJ's evaluation of Plaintiff's subjective complaints in light of SSR 16-3p.

Plaintiff argues that the ALJ erred in discrediting Plaintiff's testimony regarding his subjective symptoms. The ALJ's reasons for discounting Plaintiff's testimony include the following:

---

[6]Administrative rules will not have retroactive effect unless (i) Congress expressly authorized the administrative agency to enact retroactive rules and (ii) the new agency rule states that it is retroactive. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). A clarification of a regulation, however, does not raise issues about retroactivity. *See Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (stating that a clarifying rule "can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand," and does not raise issues of retroactivity); *see also Smolen*, 80 F.3d at 1281 n.1 ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law . . . .").

1. The ALJ concluded that Plaintiff's allegations regarding the severity of his symptoms and limitations are not supported by the objective medical evidence. (A.R. 15). For instance, the ALJ discussed records showing that while Plaintiff was diagnosed with right renal cell carcinoma and underwent a right nephrectomy, cystoscopy, and right ureteroscopy, the procedures were successful. (*Id.*). The ALJ did not unreasonably find that there is a lack of objective evidence in the record supporting Plaintiff's claimed limitations.

Further, the ALJ did not rely solely on the lack of supporting medical evidence in making his credibility determination. As discussed below, the ALJ gave other clear and convincing reasons to discount Plaintiff's credibility concerning the severity and limiting effects of his impairments. Thus, the ALJ properly considered the lack of objective medical evidence supporting Plaintiff's claimed limitations as one of the factors in weighing the credibility of Plaintiff's testimony. *Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)).

2. The ALJ noted that a November 2013 medical record indicated that Plaintiff was non-compliant with his medication. (A.R. 15). A December 2013 progress note states that Plaintiff "has [hypertension] but not taking medications for 4 years." (A.R. 306). Plaintiff's non-compliance with his course of treatment is a valid reason supported by substantial evidence for discounting Plaintiff's symptom testimony. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (claimant's failure to assert adequate reason for not complying with doctor's advice can cast doubt on the sincerity of the claimant's pain testimony); SSR 96–7p ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *Molina*, 674 F.3d at

1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.") (internal quotations and citation omitted); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" provides one basis on which an ALJ can discredit an allegation of disabling pain).

3. The ALJ recounted Plaintiff's assertions in his Exertional Activities Questionnaires that he could walk half a block in twenty minutes, was unable to move or pick anything up, and was ambulating with a cane. (A.R. 14). In his September 3, 2013 Exertional Activities Questionnaire, Plaintiff stated: "I can't lift anything over 5 lbs" and "I can't move anything, pick up anything, I pass out." (A.R. 196). In his March 5, 2014 Exertional Activities Questionnaire, Plaintiff stated: "I can't lift anything over 7 lbs" and indicated that he uses a cane "to help with balance." (A.R. 207-08). In contrast, the ALJ correctly noted that Plaintiff testified at the hearing that he could lift 15 to 20 pounds and denied using a cane or wheelchair. (A.R. 14, 40, 44). The ALJ also discussed medical records revealing normal strength, coordination, and range of motion. (A.R. 16, 318-20, 333-40).

The ALJ concluded that "the evidence as a whole shows that his subjective complaints are not sufficiently credible to require me to accept his allegation of pain and limitations." (A.R. 16). The logical inference from this statement is that the ALJ found Plaintiff's testimony to be inconsistent with the evidence in the record.[7] The ALJ's reliance on the inconsistency between Plaintiff's complaints and his treatment record qualifies as a clear and convincing reason, supported by substantial evidence in the record, for rejecting Plaintiff's subjective symptom testimony. *See Morgan*, 169 F.3d at 600 (a conflict between subjective complaints and the objective

---

[7] A reviewing court may draw specific and legitimate inferences from an ALJ's decision. *Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion").

- 15 -

medical evidence in the record is a sufficient reason that undermines a claimant's credibility).

4. The ALJ also noted that Plaintiff acknowledged that he did not seek employment after his surgery. (A.R. 16). This was not an improper factor in determining Plaintiff's credibility. *Tommasetti*, 533 F.3d at 1039 (in weighing a claimant's credibility, an ALJ may consider "other testimony by claimant that appears less than candid").

The ALJ's credibility finding in this case is unlike the brief and conclusory credibility findings that the Ninth Circuit has deemed insufficient in other cases. For example, in *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1102-03 (9th Cir. 2014), an ALJ stated in a single sentence that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." The Court of Appeals held that stopping after this introductory remark "falls short of meeting the ALJ's responsibility to provide a discussion of the evidence and the reason or reasons upon which his adverse determination is based." *Id*. at 1103 (internal quotation marks omitted). The Court further stated that an ALJ's "vague allegation that a claimant's testimony is not consistent with the objective medical evidence, without any specific findings in support of that conclusion is insufficient for our review." *Id*. (quoting *Vasquez v. Astrue*, 572 F.3d 586, 592 (9th Cir. 2009).

In *Robbins v. Astrue*, 466 F.3d 880, 883-84 (9th Cir. 2006), the Ninth Circuit found the ALJ's "fleeting credibility finding" insufficient. In *Robbins*, the ALJ simply stated that (i) the claimant's testimony was "not consistent with or supported by the overall medical evidence of record" and (ii) "[claimant's] testimony regarding his alcohol dependence and abuse problem remains equivocal." *Id*. In discussing why the ALJ's finding was insufficient, the Court explained that the ALJ did not provide a "narrative discussion" containing "specific reasons for the finding . . .supported by the evidence in the record." *Id*. at 884-85.

Similarly, in *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995), an ALJ simply concluded that the claimant's complaints were "not credible" and "exaggerated." The Court held that the finding was insufficient as the ALJ did not provide any specific reasons for disbelieving the claimant other than a lack of objective evidence. *Id.* at 834.

Here, unlike in *Treichler*, *Robbins*, and *Lester*, the ALJ's decision goes beyond making a "fleeting" and conclusory remark that Plaintiff's testimony is not credible. The decision discusses the evidence and explains the inconsistencies in the record that the ALJ found discredited Plaintiff's testimony. The ALJ's conclusion is supported by substantial evidence in the record.

It is possible that a different ALJ would find Plaintiff's symptom testimony credible. But it is not the Court's role to second guess an ALJ's decision to disbelieve a Plaintiff's allegations. *Fair*, 885 F.2d at 603 ("An ALJ cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ."). The Court finds that the reasons provided by the ALJ for discrediting Plaintiff's testimony are specific, clear, convincing, and are supported by substantial evidence in the record. The Court therefore finds that the ALJ did not err in discrediting Plaintiff's subjective testimony.

### III. CONCLUSION

The Court has reviewed the record and finds the ALJ's decision is supported by substantial evidence and is free from reversible error.[8] Based on the foregoing discussion, the decision of the Commissioner of Social Security is affirmed.

---

[8] To the extent that Plaintiff may challenge the ALJ's decision on other grounds not discussed in this Order, the challenge has been waived by failing to raise and sufficiently develop the grounds in Plaintiff's Opening Brief. *See Bray v. Commissioner of Social Security Admin.* 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (deeming argument not made in disability claimant's Opening Brief waived); *Bisuano v. Colvin*, 584 F. App'x 512, 513 (9th Cir. 2014) ("Bisuano waived his argument that the ALJ erred in relying upon the opinion of single decisionmaker Keith Perron, because he did not sufficiently argue it before the district court or this court.").

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner of Social Security. The Clerk of Court shall enter judgment accordingly.

Dated this 24th day of May, 2017.

*[signature: E.S. Willett]*
Eileen S. Willett
United States Magistrate Judge